UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON RYAN HARDY,

v.  Case No. 8:20-cr-318-VMC-TGW
    8:23-cv-2932-VMC-TGW

UNITED STATES OF AMERICA.

_____/

**ORDER**

This matter is before the Court on Jason Ryan Hardy's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. ## 1-2; Crim. Doc. ## 97-98). The United States of America responded on March 19, 2024. (Civ. Doc. # 7). Mr. Hardy filed a reply on March 26, 2024. (Civ. Doc. # 8). The Motion is denied.

I.  **Background**

In October 2020, Mr. Hardy was indicted on one count of conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C §§ 846 and 841(b)(1)(A). (Crim. Doc. # 1). For the majority of the case, Mr. Hardy was represented by attorney Jeffrey Brown.

Mr. Hardy subsequently pled guilty pursuant to a plea agreement. (Crim. Doc. ## 55, 57, 59). At the January 11, 2022 change of plea hearing, Mr. Hardy was placed under oath.

1

(Crim. Doc. # 99 at 6-7). Mr. Hardy had a copy of his plea agreement in front of him and swore that he had reviewed it with his attorney. (Id. at 11). Assuring the Court that he understood the charge and that he had reviewed it with his attorney, Mr. Hardy pleaded guilty. (Id. at 12, 20). Mr. Hardy understood that if he had gone to trial the United States needed to prove that two or more people had a plan to distribute 500 grams or more of a mixture and substance which contained a detectable amount of methamphetamine. (Id. at 12-13). Likewise, Hardy assured the Court that he had read the factual basis in the plea agreement and that the factual basis was true. (Id. at 14-15).

The plea agreement's recitation of the facts follows:

> Beginning on an unknown date and continuing through in or around October 2020, the defendant Jason Hardy, in the Middle District of Florida, did knowingly and willfully conspire with others to distribute 500 grams or more of methamphetamine. As part of this conspiracy, the defendant flew to California and coordinated the delivery of mail packages of methamphetamine from California to the Middle District of Florida.
>
> On or about June 19, 2020, law-enforcement officers interdicted and seized one such package. Officers searched the package, and in it they found approximately nine kilograms of methamphetamine, as confirmed by laboratory tests. Hardy intended to receive that package in the Middle District of Florida and further distribute the methamphetamine in the district.

(Crim. Doc. # 56 at 16).

Further detail about the interdiction of the drugs was provided in the amended final presentence report, which the Court adopted at sentencing. (Doc. # 85). "On June 19, 2020, police officers from El Centro, California . . . responded to a FedEx store located [in] Imperial, California, about a suspicious package the FedEx employees had received." (Id. at ¶ 10). The FedEx employees considered the package suspicious because of the behavior of the women who brought it in and because "both the sender and recipient addresses listed on the shipping label were Florida addresses." (Id. at ¶¶ 10-11). Mr. Hardy's name and address were listed as the shipper. (Id. at ¶ 12). "Based upon the FedEx workers' suspicions, the employees opened the package and contacted law enforcement." (Id.).

Then, "a certified drug detection dog . . . made a positive alert on the package which indicated the likely presence of a controlled substance." (Id. at ¶ 13). Officers returned to the police department and "inspected the contents of the package and located methamphetamine." (Id.). Federal authorities in Tampa "adopted the case" and received the package, which contained methamphetamine, on June 22, 2020. (Id. at ¶ 14).

After determining that Mr. Hardy agreed with the factual basis, the change of plea hearing continued. Mr. Hardy swore he understood that, after his guilty plea had been accepted, he could not withdraw his guilty plea. (Doc. # 99 at 16). After advising Mr. Hardy generally of the trial rights he would waive by pleading guilty, the Court expressly questioned him regarding his waiver of any applicable defenses:

> THE COURT: Further, if you have any defense to this charge any defense that you have is lost by a plea of guilty. Do you understand that?
>
> [MR. HARDY]: Yes, sir.
>
> THE COURT: And if there's any claim of an unlawful search and seizure or unlawful statements obtained, any claim like that is lost by a plea of guilty. Do you understand that?
>
> [MR. HARDY]: Yes, sir.

(Id. at 18).

Mr. Hardy assured the Court that he did not need additional time to confer with his counsel concerning whether he should plead guilty, that he was satisfied with counsel's representation in his case, and that there was nothing he thought counsel should have done that he did not do. (Id. at 19). During the Court's discussion of the applicable penalties, Mr. Hardy's counsel pointed out that Mr. Hardy had

4

decided to enter the plea agreement before the United States had filed a notice of its intent to seek enhanced penalties under 21 U.S.C. § 851, and that if the United States had not foregone the enhanced penalties, Mr. Hardy would have faced a mandatory minimum term of 15 years' imprisonment. (Id. at 8-9, 20).

Mr. Hardy swore he understood his limited rights to appeal. (Id. at 28-29). He agreed that he had entered a guilty plea freely and voluntarily. (Id. at 29-30). No one forced, coerced, or promised Mr. Hardy anything in return for a guilty plea. (Id. at 30). Mr. Hardy agreed that his answers to the Court's questions had been truthful and that nobody had coached him into testifying anything other than the truth. (Id. at 31). Having determined that a factual basis supported the guilty plea, the Court found Mr. Hardy's plea to be both knowing and voluntary. (Id. at 33). The Court accepted his plea and adjudicated him guilty. (Doc. # 58).

On December 9, 2022, the Court sentenced Mr. Hardy to 130 months' imprisonment, a below-guidelines sentence. (Crim. Doc. ## 88, 90). In his sentencing memorandum and during the sentencing, Mr. Hardy's counsel objected to the calculation of the methamphetamine sentencing guideline, the failure to give Mr. Hardy a minor role adjustment, and Mr. Hardy's status

as a career offender. (Crim. Doc. # 82; Crim. Doc. # 88; Crim. Doc. # 100 at 9-15). The Court overruled these objections. (Crim. Doc. # 100 at 9-15). Mr. Hardy did not appeal.

Now, Mr. Hardy seeks to vacate his conviction and sentence, raising a claim of ineffective assistance of counsel. (Civ. Doc. # 1; Crim. Doc. ## 97-98). The United States has responded (Civ. Doc. # 7), and Mr. Hardy has replied. (Civ. Doc. # 8). The Motion is ripe for review.

## II. Discussion

Mr. Hardy raises one ground for relief in his 2255 Motion: a claim of ineffective assistance of counsel. (Civ. Doc. # 1 at 4). According to Mr. Hardy, "counsel Jeffrey Brown performed ineffectively by failing to challenge evidence that was the result of an illegal search and seizure in violation of the Fourth Amendment. Thus, the evidence was obtained illegally. Counsel's failure to challenge the evidence lead [sic] to a conviction based on illegal evidence or fruits of the poisonous tree." (Id.).

This claim has been timely raised and is cognizable. (Civ. Doc. # 7 at 7). Mr. Hardy bears the burden of proof and persuasion on every aspect of his claim. Beeman v. United States, 871 F.3d 1215, 1223-24 (11th Cir. 2017); Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

6

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Hardy must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Mr. Hardy must show that "no competent counsel would have taken the action that his counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Hardy must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient

7

to undermine confidence in the outcome." Id. "[I]f a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." Ortiz v. United States, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

The United States is correct that Mr. Hardy, in passing, claims that counsel's ineffective assistance in failing to challenge the evidence renders his guilty plea involuntary. See (Civ. Doc. # 2 at 3) ("The drug evidence was obtained in violation of the Fourth Amendment, during an unlawful search of Movant's mail, and Counsel's failure to challenge the drug evidence renders Movant's plea invalid and unknowing."). Mr. Hardy is incorrect as his plea was knowing and voluntary.

The Supreme Court has held that "the two-part Strickland [] test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). "There is a strong presumption that statements made during the plea colloquy are true. Consequently, a defendant bears a heavy burden to show that his statements under oath were

8

false." Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (citations omitted). The Court is mindful that a "section 2255 motion is not designed to account for buyer's remorse regarding a defendant's decision to plead guilty." Dawson v. United States, No. 8:16-cr-500-VMC-AEP, 2019 WL 11704149, at *6 (M.D. Fla. Apr. 15, 2019).

Mr. Hardy made numerous statements under oath at his change of plea hearing that undercut that his plea was involuntary. The Court fully explained the elements of the offense and maximum penalties to Mr. Hardy, who agreed that he understood and had reviewed the plea agreement with counsel. (Doc. # 99 at 11-31). Importantly, the Court explicitly explained to Mr. Hardy that "if there's any claim of an unlawful search and seizure or unlawful statements obtained, any claim like that is lost by a plea of guilty." (Id. at 18). Mr. Hardy stated that he understood, but he still proceeded to plead guilty. (Id.). Mr. Hardy stated that he was entering the guilty plea voluntarily and that no one had forced, threatened, or coerced him into pleading guilty. (Id. at 29-31).

Mr. Hardy has not satisfied the heavy burden of showing that his statements made under oath during his plea colloquy were false. See Winthrop-Redin v. United States, 767 F.3d

9

1210, 1217 (11th Cir. 2014) ("[B]ecause Winthrop-Redin made statements under oath at a plea colloquy, 'he bears a heavy burden to show his statements were false.'" (citation omitted)). The Court does not credit Mr. Hardy's new conclusory allegation that his plea was involuntary and unknowing because counsel failed "to challenge the drug evidence" as illegally obtained. (Civ. Doc. # 2 at 3). Therefore, Mr. Hardy's plea was knowing and voluntary.

Regardless, Mr. Hardy's claim of ineffective assistance of counsel fails on the merits. As mentioned before, Mr. Hardy faults his counsel for not moving to suppress the drug evidence obtained by law enforcement. "[W]here a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of Strickland turn on the viability of the motion to suppress." Arvelo v. Sec'y, Fla. Dep't of Corr., 788 F.3d 1345, 1348 (11th Cir. 2015).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Once a private individual conducts a search of property (such as a sealed package) of their own accord, a law enforcement officer may replicate that search without

10

violating the Fourth Amendment. See United States v. Jacobsen, 466 U.S. 109, 119 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment."). The subsequent search is permissible as long as this search by law enforcement does not "exceed[] the scope of the private search." Id. at 115. "In other words, the government's ability to conduct a warrantless follow-up search of this kind is expressly limited by the scope of the initial private search." United States v. Lichtenberger, 786 F.3d 478, 482 (6th Cir. 2015).

The record here establishes that the FedEx employees were suspicious of the package and opened it of their own accord. (Doc. # 85 at ¶ 12). Only after they saw the contents of the package did the FedEx employees contact law enforcement, whose drug dog later alerted on the package. (Id. at ¶ 13). "[L]aw enforcement simply replicated a search that was initially performed by FedEx employees, who were private actors, acting on their own accord when they opened the package." (Civ. Doc. # 7 at 13). "Therefore, the officer's viewing of what the FedEx employees . . . had freely made available for his inspection, did not violate the Fourth Amendment since it did not exceed the scope of the FedEx

11

employees' search." (Id.); see also United States v. Young, 350 F.3d 1302, 1306–07 (11th Cir. 2003) ("Here, too, the Federal Express packages were 'effects' in the context of the Fourth Amendment, and therefore defendants presumptively possessed a legitimate expectation of privacy in their contents. Per Jacobsen, this privacy interest would have been eliminated had the Federal Express employee inspected the package, discovered the currency and then contacted the IRS agents to replicate the search."). For this reason, no Fourth Amendment violation occurred here.

In his reply, Mr. Hardy states conclusorily that FedEx "has a very clear policy" that its workers not open suspicious packages, but rather leave it to law enforcement to open packages. (Civ. Doc. # 8 at 4).[1] So, Mr. Hardy reasons, it

---

[1] Mr. Hardy also asserts for the first time in his reply that there is "a clear Brady violation where the government has withheld the discovery." (Civ. Doc. # 8 at 4). It is improper to assert a new claim in a reply brief. Thus, to the extent Mr. Hardy has attempted to raise a Brady claim or any other new claim in his reply, the Court declines to consider those claims. See Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) ("[T]he district court did not violate Clisby by failing to address his claim that his counsel was ineffective for failing to object to the sentencing court's U.S.S.G. § 2B1.1(b)(11)(C)(i) enhancement. Oliveiri did not present this claim in his § 2255 motion, but rather raised it for the first time in his reply to the government's response. By doing so, he waived the claim. Although Clisby requires a district court to resolve every claim properly presented in a § 2255 motion, it

12

must have been law enforcement who opened the package without a warrant. (Id.). Mr. Hardy, however, does not provide any evidence to support this, such as a copy of FedEx's alleged policy or an affidavit from a FedEx employee who handled the package at issue in this case. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to demonstrate entitlement to habeas relief). Consequently, there is no factual support for Mr. Hardy's contention that law enforcement illegally opened the package. Indeed, Mr. Hardy seems to acknowledge that he does not have evidence to establish that a Fourth Amendment violation occurred. He contends that "[a]n investigation *will* reveal that the discovery in this case refutes the government's position" and he "pleads with this Court to *develop the record* and order the government to produce the entire discovery which tells a different story than the developed record the government has alluded to." (Civ. Doc. # 8 at 4-5) (emphasis added). This is insufficient to satisfy Mr. Hardy's burden.

---

does not require the court to address a claim that a movant waives by failing to raise it until his reply brief." (citations omitted)).

In short, because no Fourth Amendment violation occurred, Mr. Hardy has not established that any motion to suppress the drug evidence would have been meritorious. See Castillo v. United States, 816 F.3d 1300, 1303 (11th Cir. 2016) ("If a search was constitutional, then counsel is not obligated to move to suppress the evidence or dismiss the indictment and a defendant is not prejudiced by counsel's failure to do so."). Thus, counsel was not ineffective for failing to file such a motion to suppress. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). And Mr. Hardy was not prejudiced by that failure. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

The Motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Jason Ryan Hardy's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. ## 1-2; Crim. Doc. ## 97-98) is **DENIED.**

(2) The Clerk is directed to enter judgment in favor of the United States of America and against Mr. Hardy and, thereafter, to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of October, 2024.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE